IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27 WELFARE AND PENSION FUNDS,<br><br>Plaintiffs,<br><br>v.<br><br>MIDWEST BUILDING SERVICES, INC., d/b/a MIDWEST CONTRACT GLAZING, INC., an Illinois corporation and MIDWEST CONTRACT GLAZING, INC.,<br><br>Defendant. | No.  FILED: APRIL 18, 2008<br>     08CV2234 EDA<br>Judge  JUDGE GETTLEMAN<br>     MAGISTRATE JUDGE VALDEZ<br>Magistrate Judge |

## COMPLAINT

Plaintiffs, by their attorneys, DONALD D. SCHWARTZ and ARNOLD AND KADJAN, complain against Defendant, **MIDWEST BUILDING SERVICES d/b/a MIDWEST CONTRACTING GLAZING, INC., an Illinois corporation, and MIDWEST CONTRACT GLAZING, INC.,** as follows:

### COUNT 1

1. (a)  Jurisdiction of this cause is based on Section 301 of the National Labor Relations Act, 29 U.S.C. Section 185 (a) as amended.

   (b)  Jurisdiction of this cause is based upon Section 502 of the Employee Retirement Security Act of 1974, 29 U.S.C. Section 1132, 1145 ("ERISA"), as amended.

2. Venue is founded pursuant to 29 U.S.C. Section 1132 (e)(2) in this District where the Funds, as described in Paragraph 3, are administered.

3. (a)  The Plaintiffs in this count are the TRUSTEES OF THE GLAZIERS,

ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27 FRINGE BENEFIT FUNDS ("the Funds"), and have standing to sue pursuant to 29 U.S.C. Section 1132(d)(1).

(b) The Funds have been established pursuant to collective bargaining agreements previously entered into between the Glaziers Union Fringe Benefit Funds and its affiliated locals (the "Union") and certain employer associations whose employees are covered by the collective bargaining agreement with the Union.

(c) The Funds are maintained and administered in accordance with and pursuant to the provisions of the National Labor Relations Act, as amended, and other applicable state and federal laws and also pursuant to the terms and provisions of the agreements and Declarations of Trust which establish the Funds.

4. (a) Defendants, **MIDWEST BUILDING SERVICES d/b/a MIDWEST CONTRACTING GLAZING, INC., an Illinois corporation, and MIDWEST CONTRACT GLAZING, INC. ("MIDWEST")** are authorized to do business in Illinois and is an employer engaged in an industry affecting commerce.

5. Since on or about February 12, 2001, **MIDWEST** has entered into successive collective bargaining agreements with the Union pursuant to which it is required to pay specified wages and to make periodic contributions to the Funds on behalf of certain of its employees (Exhibit "A").

6. By virtue of certain provisions contained in the collective bargaining agreements, **MIDWEST** is bound by the Trust Agreement establishing the Funds.

7. Under the terms of the collective bargaining agreements and Trust Agreements to which it is bound, **MIDWEST** is required to make contributions to the Funds on behalf of their

employees and, when given reasonable notice by Plaintiffs or their representatives, to submit all necessary books and records to Plaintiff's accountant for the purpose of determining whether or not it is in compliance with its obligation to contribute to the Funds.

8. Since before February 12, 2001, **MIDWEST** has admitted, acknowledged and ratified the collective bargaining agreements entered into with the Union by filing periodic report forms with the Funds by making some but not all of the periodic payments to the Funds as required by the collective bargaining agreements.

9. Plaintiffs are advised and believe that for **February 1, 2007 through December 31, 2007, MIDWEST** has failed to make some of the contributions from time to time required to be paid by it to the Funds pursuant to the terms of the Trust Agreements by which it is bound, all in violation of its contractual obligations and its obligations under applicable state and federal statutes in the amount of **$59,592.09 benefits, $8,938.82, prior liquidated damages, $8,996.90 liquidated damages and $765.00 audit costs for a total due of $78,292.81.**

**WHEREFORE,** Plaintiff pray for relief as follows:

A. Judgment be entered on any amounts found to be due on the audit for the period **February 1, 2007 through December 31, 2007** for **$78,292.81**.

B. Plaintiffs be awarded their costs herein, including reasonable attorneys' fees and costs incurred in the prosecution of this action, together with liquidated damages in the amount of 20%, all as provided in the applicable agreements and ERISA Section 502(g)(2).

C. **MIDWEST** be enjoined from violating the terms of the collective bargaining agreements and Trust Agreements by failing to make timely payments to the Funds and be ordered to resume making those payments.

D.    This Court grant Plaintiffs such other and further relief as it may deem appropriate under the circumstances.

                Respectfully submitted,

**TRUSTEES OF THE GLAZIERS, ARCHIECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27 WELFARE AND PENSION FUNDS**

By: s/ Donald D. Schwartz
     One of their Attorneys

Donald D. Schwartz
**ARNOLD AND KADJAN**
19 West Jackson Blvd.
Chicago, Illinois 60604
(312) 236-0415

4

# ARTICLES OF AGREEMENT

**ARTICLES OF AGREEMENT** made this first day of September 30, 1999 by and between **MIDWEST BUILDING SERVICES, INC., 2445 N. Laramie, Chicago, IL 60639** ("Employer") and **GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27, CHICAGO AND VICINITY,** of the International Brotherhood of Painters and Allied Trades, AFL-CIO (the "Union").

## ARTICLE I
### Union Recognition

Section 1. The Employer recognizes the Union as the sole and exclusive collective bargaining representative of all Glazier and Apprentice Glazier employees (performing work hereinafter described in Article 6 and within the geographical area covered in Article 8 of this Agreement) for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, employment practices, standards of workmanship, safety practices and other conditions of employment.

Section 2. When hiring new Employees, the Employer shall give first consideration to qualified Glaziers and Apprentice Glaziers who have prior experience with Employers covered by this Agreement and performing work within the area covered by this Agreement. It is recognized, however, that the Employer has the final right to select the Employees to be hired. It shall be the responsibility of the Union to assist the Employer in obtaining competent Glaziers.

The Employer, the Union, and Employees agree to conform to any law applicable and that there will be no discrimination in the hiring of Employees or in their training, layoff, discipline, discharge, referral, membership in the Union, or otherwise because of race, color, creed, national origin, religion or sex.

Section 3. It shall be a condition of employment that all Employees of the Employer covered by the Agreement who are members of the Union in good standing on the date of the signing of this Agreement shall remain members in good standing and those who are not members on the date of the signing of this Agreement shall, on the eighth (8th) day following the date of the signing of this Agreement, become and remain members in good standing in the Union.

It shall also be a condition of employment that all Employees covered by this Agreement and hired on or after the date of the signing of this Agreement shall, on the eighth (8th) day following the beginning of such employment, become and remain members in good standing in the Union.

Section 4. Having complied with all the provisions of this Agreement on its part to be performed, the Employer shall be permitted to advertise and otherwise identify the Employer as a Union shop and the employees covered by the Agreement shall be permitted to affix the Union label of Glaziers, Architectural Metal and Glass Workers Local Union No. 27 on all work completed by them in a manner approved by the Union.

In the event this Agreement is terminated, then all such advertising shall be immediately canceled or otherwise recalled.

## ARTICLE 2
### Hours and Work Rules

Section 1. Eight (8) hours shall constitute a day's work between the hours of 7:00 A.M. and 4:30 P.M., with one-half (½) hour interval for lunch. A day will be 7:00 A.M. to 3:30 P.M. or 8:00 A.M. to 4:30 P.M., as directed by the Employer. Except when the Union, Employer and Employee agree for safety and efficiency of work on new construction **hoisting only**, 6:00 A.M. starting time may be used. No Employee will be employed for a fractional part of a day's work. Any Employee who is late in reporting for work will only be paid for the time he actually works, provided work originally scheduled is available. If any Employee is late or fails to appear, immediate efforts to obtain a replacement, if it is known he is not going to appear, will be made,

1

EXHIBIT A

and the remaining Employees will immediately start work that can be performed without the absentee(s) or his/her/their replacement(s). Any replacement will only be paid for the time he/she actually works.

With mutual consent of both Employer, Employee and the Union, for shops employing four (4) or less Employees, that the interchange of Employees be allowed for jobs under four (4) hours with shops employing no more than five Employees.

When an Employee reports on a job and is told not to start work, the Employer shall pay two (2) hours show up time, at the prevailing rate of wages. Once work has started and weather conditions become such that the Foreman and the Union decide the job is unworkable, the Foreman and entire crew may be sent home and paid for a four (4) hour day. At the start of the fifth hour, Employees must be paid for eight (8) hours.

When a specific job calls for shift work (night work), Three Dollars and Fifty Cents ($3.50) per hour above the prevailing rate shall be paid. Employees shall be prohibited from working back to back shifts, including all foremen and superintendents. Shift work will not take the place of premium time work. The Union must be notified of any shift work jobs.

Section 2A. The Employer agrees not to require the Employees covered by this Agreement to transport any materials or equipment within their own private automobile, except the employee's own tools. However, an Employee may agree to transport the Employer's material and equipment in his car, but he will not be liable for loss or damage. It is agreed an employee's automobile shall not be considered as a condition of employment. However, each Employee is required, as a condition of employment to provide the following hand tools: Tool box or bag, chisels, screwdrivers (straight and Phillips), nail set, hack saw, awl, Stanley knife, claw hammer, mallet, rule, file, rubber or vinyl cutter, glass pliers, wonder tool (jimmy bar, small), putty knives (straight and bent). The Employer shall furnish his Employees with their first hard hat but the employee may pay for replacements for such hard hat, normal wear and tear expected. The Employer will also provide all power tools and suction cups. Employees will be required to sign an official form to use company suction cups and power tools for the term of the employment. The Employee will be held responsible if the cups and power tools are not returned and will be charged the price of a comparable cup or power tool.

Section 2B. No Employee shall be required to walk up more than eight (8) floors from any level on any job site, this section to become effective providing a majority of other crafts of the Building Trades in the Chicago Metropolitan area have agreed to the same type of arrangement in their respective Union Labor Agreement.

Section 3. No Employees covered by this Agreement will be allowed to work before 8:00 A.M., after 4:30 P.M., or on Saturdays, Sundays or holidays without notification to the Union prior to such work, except as otherwise provided in Article 2, Section 1, herein. All overtime will be manned by the Glaziers who manned that job during the normal working day.

The Union will have the right to refuse such overtime to Employers and Employees who are in arrears of Health and Welfare, Pension and Apprentice Fund Fringes, Dues Check off or Local Dues.

Section 4. The following days shall be observed as holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. No work shall be performed on Labor Day.

Section 5. All regular Employees working for an Employer shall be rotated equally where possible, consistent with efficient operations.

Section 6. Employees will adhere to job safety regulations.

### ARTICLE 3
### Overtime

When Employees are asked to work after cessation of a regular day's work (minimum of one-half (½) hour work), time and one-half (1 ½) shall be paid for the first two (2) hours of such overtime each day, Monday through Friday, and double time shall be paid after such two (2) hour overtime period each day, Monday through Friday. Saturdays, Sundays and holidays shall be paid at the rate of double time. The Employee shall be paid to the next nearest one-half (½) hour for all work performed on overtime.

However, on Saturdays and Sundays when the job duration does not exceed four (4) hours, eight (8) hours pay at the straight time rate will be allowed through mutual agreement between the Employer and Union (between the hours of 8:00 A.M. and 4:30 P.M.). There shall be no fractional part of the 8:00 A.M. to 12 P.M.(noon), or 12:30 P.M. to 4:30 P.M. except when the Union, Employer and Employee agree for safety and efficiency of work on new construction hoisting only, starting time may by 6:00 A.M. or 7:00 A.M.

## ARTICLE 4
### Wages

Section 1. For the period beginning June 1, 1998 through May 31, 1999 the rate of wages to be paid by the Employer to Journeyperson Glaziers shall be Twenty Five Dollars and Ten Cents ($25.10) per hour or Two Hundred Dollars and Eighty Cents ($200.80) per day.

Effective June 1, 1999, the negotiated increase will be One Dollar and Forty Cents ($1.40) per hour. Distribution to be decided at a later date.

Effective June 1, 2000, the negotiated increase will be One Dollar and Forty Cents ($1.40) per hour. Distribution to be decided at a later date.

Effective June 1, 2001, the negotiated increase will be One Dollar and Forty Cents ($1.40) per hour. Distribution to be decided at a later date.

Effective June 1, 2002, the negotiated increase will be One Dollar and Forty Five Cents ($1.45) per hour. Distribution to be decided at a later date.

Section 2. There shall be an established pay day for all employees at least one (1) day each week of the Agreement. Employers shall not hold back more than three (3) days' pay. All deductions, such as Social Security, withholding tax, administrative dues, etc., must be noted on the check stubs.

Section 3. When employees are laid off or discharged, they shall be paid in full at the time of such layoff or discharge. An employee quitting of his own accord shall be paid on the next regular pay day.

Section 4. Employees working on a daily referral will be paid on the next regular pay day.

## ARTICLE 5
### Bonuses

Section 1. It is agreed that the Employer shall not pay bonuses of any kind or description to Journeyperson Glaziers, directly or indirectly, except as provided for in Article 4; Article 11; and Article 12, Section 4.

## ARTICLE 6
### Classification/Scope of Work

Section 1. It is mutually understood and agreed that none but Journeyperson Glaziers or Apprentices will be employed on the following classifications: general glazing, including the setting, cutting, preparing, handling as customarily performed by Journeypersons and Apprentice Glaziers, or removal of the following: prism glass, beveled glass, leaded glass, protection glass, plate glass, window glass, mirrors of all types, wire glass, ribbed glass, ground glass, colored glass, figured glass, glass chalk boards, Vitrolite glass, Carrara glass, and all other types of opaque glass, structural glass, entire construction of Herculite doors, Tuflex doors, and laminated glass, all types of insulating glass units, fibre glass, plastic domes, all plastics Resolite, Alsynite, Arcylite or any similar materials, flat or corrugated when used in place of glass, to be set, dry bolted, lapped, screwed, nailed or glazed with putty, Thiokol, Neoprene, glues, glass cement, and all other types of sealants, molding, rubber, cloth, cork, felt, all types of tapes, and gaskets, all types of mastic, in wood, steel, iron, aluminum or sheet metal sash, skylights, doors, frames, stone, wallcases, showcases, storefronts, monitors, soffits, wall bulkheads, valance, fascia, fireplaces, firehose cabinets, sillfloor, door and floor trim, display bins, all glass shelving and dividers, bookcases, sideboards, partitions and fixtures; the handling and using of all tools, equipment relative to their work, all materials delivered to the job site, including all materials

3

at the job site that have come to rest at floor level, from the hoist, elevator or lifting device and distribution of all glass, boxed, crated or loose; putty and other materials to be used in the performance of a glazing operation; reglazing and reputtying of all old and new sash.

The installation of all extruded, rolled, or fabricated metals or any materials that replace same, metal tubes, mullions, metal facing materials, muntins, fascia trim moldings, porcelain panels, architectural porcelain, plastic panels, skylights, showcase doors and relative materials including those in any or all types of building related to storefront and window construction.

Door and window frame assemblers such as patio sliding or fixed doors, vented or fixed windows, shower doors, bath tub enclosures, storm sash where the glass becomes and integral part of the finished product, including the installation of the above.

It shall be up to the Employer's discretion to make the assignment on all metals or materials used in construction of storefront metal in compliance with past area practices with other Building Trades Unions.

Scaffolding of any type or description incorporating all safety rules (except scaffolding provided by the General Contractor and/or patent type scaffolding, the use and erection of which shall have been contracted for by the Employer); and the installation of the above materials when in the shop or on the job site, either temporary or permanent, on, or for any building in the course of repair, remodel, alteration or construction.

## ARTICLE 7
## Sub-contracting

Section 1. All glass and glazing work undertaken by the Employer within the territory hereinafter specifically described in Article 8 shall be glazed by Employees covered by this Agreement, in conformity with the decision of the National Board of Jurisdictional Awards.

Section 2. The Employer shall not contract out or sub-contract any work covered by this Agreement to any subcontractor or other person unless that subcontractor or other person is a party to any Glaziers' Collective Bargaining Agreement with this Union.

Section 3. It is agreed that where glazing contracts are taken outside of the specified territory covered by the Agreement, not less than twenty-five (25%) percent of the Glaziers or Apprentices employed shall be among the Employees of the Employer who are then employed under the terms of this Agreement.

## ARTICLE 8
## Geographical Area

Section 1. This Agreement applies to all work covered by the terms of this Agreement which is performed within the following geographical area:
On the north the Wisconsin State line, on the west Route 47, from the
Wisconsin State line north, to Route 24 south, with a ten (10) mile buffer
zone, east of Route 47, from Route 52 north to Route 24 south, with full jurisdiction given to Local 1164 regarding the following towns on Route 47: Sugar Grove, Yorkville, Morris and Dwight; on the east, Route 53, Gary, Indiana to Highway 6, then west to Highway 55 then south to Fowler, Indiana and on the south to Route 24. See map on the following page.

4

## ARTICLE 9
### Lodging

When Glaziers are sent out of the area specified in Section 1, Article 8, where it is impracticle for them to return home each night, the board, lodging if necessary, and transportation costs shall be paid by the Employer, and all riding time, but not to exceed four (4) hours, shall be paid at the rate of single time.

## ARTICLE 10
### Apprentices

Section 1. Apprentices shall be indentured in the employ of the Employer in accordance with the Apprenticeship Program approved by the United States Department of Labor.

Section 2. The Employer shall be entitled to one (1) Apprentice for the first three (3) Journeyperson Glaziers employed and one (1) for each additional six (6) Journeyperson Glaziers employed.

(Exception: If the Employer's right to train apprentices has been revoked by the Joint Apprenticeship and Training Committee). This section shall not be construed to replace any Journeyperson in any shop when the Joint Apprenticeship and Training Committee determines that substantial unemployment exists in the area.

Section 3. The wages of the apprentice shall be as follows:

| | | |
|---|---|---|
| 1. | First six months | - 35% of Journeyperson's wage rate |
| 2. | Second six months | - 45% of Journeyperson's wage rate |
| 3. | Third six months | - 55% of Journeyperson's wage rate |
| 4. | Fourth six months | - 70% of Journeyperson's wage rate |
| 5. | Fifth six months | - 80% of Journeyperson's wage rate |
| 6. | Sixth six months | - 90% of Journeyperson's wage rate |

After three (3) years of apprenticeship and upon certification of the J.A.T.C. Instructor and J.A.T.C. Trustees, he or she shall be given the Journeyperson's wage rate.

Section 4. Apprentices can be used on all glass requiring more than three (3) persons according to the glass size schedule. Not more than one (1) apprentice may be used except where six (6) or more persons are required as provided in Article 14.

Section 5. A Joint Apprenticeship Committee composed of three (3) representatives of the Glazing Contractors of Chicago and Vicinity and three (3) Union representatives shall be established in conformity by the United States Department of Labor, Bureau of Apprenticeship and the Glaziers Joint Apprenticeship Agreement of Chicago and Vicinity.

It shall be the duty of this Committee to implement the present Apprenticeship Program and to establish the rules of its operation and such Committee shall meet at least once each quarter for such purpose.

RECEIVED 11-21-'06 11:48    FROM- 7084439007    TO- Arnold & Kadjan    P010/014

Section 6. Apprentices shall not work alone and shall be with a Journeyperson Glazier on each job. Apprentices shall be allowed to work overtime as long as a Journeyperson is not bumped for such overtime. Apprentices will not be allowed to work overtime on his or her regularly scheduled school night.

Section 7. The parties hereby agree to become participants in the National Glaziers and Glassworkers Industry Apprenticeship Training and Journeyman Education Fund, and the Employer shall contribute to said Fund, twenty cents ($.20) for each hour worked by employees under this Agreement, effective June 1, 1998.

Effective January 1, 1992 contributions on behalf of the National Apprentice Fund shall be made to the Glaziers Union Local No. 27 Joint Apprenticeship Fund.

Section 8. Employers will be notified by the Glaziers Union Local No. 27 Joint Apprenticeship Training Committee when Journeyperson classes are offered.

## ARTICLE 11
### Swing Stage/Scaffold/Insurance

Section 1. Whenever Glaziers and Apprentices are required to work on swing stages, scaffold, hydraulic or electric scaffold or jacks of any description or with window washer belts where there is a thirty (30) foot or more fall, they shall receive Fifty Cents ($.50) per hour over the prevailing rate of wages for such work.

Section 2. Where skylights are glazed and are held in place by bolts, screws or nuts from the inside of the opening, which creates a most hazardous condition for the Glazier, Fifty Cents ($.50) per hour over the prevailing rate of wages shall be paid for such work.

Section 3. It is agreed that all necessary scaffolding, etcetera, required on any building during the course of construction or repair, shall be furnished by the Employer. It is agreed that scaffolding, either rented or owned by the Employer, can be erected initially and dismantled by Glaziers or qualified erecting companies provided that such work is done in conformity with the State Laws of Illinois.

Section 4. It is also agreed that the Employer must carry all necessary and required insurance, covering all of his Employees. He shall carry Worker's Compensation Insurance in the State in which his Employees are working. He shall also make contributions for Social Security and unemployment insurance as required by law regardless of the number of men employed by him. Each Employer shall file with the Union a certificate of such Workmen's Compensation Insurance containing not less than a ten (10) day notice of cancellation.

Section 5. Should any Employee meet with an accident while at work, the person in charge of the work shall see that the Employee is cared for. Transportation shall be furnished to a doctor or to a hospital by the Employer at the Employer's expense. All injuries, regardless of how minor, will be reported to the Employer within twenty-four (24) hours by the foreman, supervisor and/or the injured Employee.

## ARTICLE 12
### Foreman/Shop Steward

Section 1. The Business Representative and Shop Steward shall be furnished a list of all new hires by the Employer.

Section 2. The Union shall have the right to appoint a Shop Steward in each shop from the Union members regularly employed in each shop.

Section 3. The duty of all stewards is to enforce the rules of this Agreement and to report to the Business Representatives any infractions or violations that may come to his attention. He/ she shall have the right to examine working cards and to object to any employee working not in possession of the current quarterly working card. A Shop Steward shall not be discharged for performing duties of a Shop Steward.

6

Section 4. All Foremen shall receive One Dollar and No Cents ($1.00) per hour above the prevailing scale. At the option of the Employer, a General Foreman can be appointed and be paid One Dollar and Twenty Five Cents ($1.25) per hour above the prevailing scale.

Section 5. A Foreman shall be appointed by the Employer for all work contracted for by the Employer, when the size of the crew exceeds three (3) persons.

The duties of the Foreman, among others, shall be as follows:

(A) Seeing that material requirements and equipment are available for the most efficient conclusion of the job.
(B) When necessary, inform his/her Employer of glass types and sizes required.
(C) Coordinate glass and glazing work with other trades.
(D) When requested, report Glaziers' time on Employer's regular time cards.

## ARTICLE 13
### Expense Money

Each Journeyperson Glazier and Apprentice Glazier shall receive Five Dollars and No Cents ($5.00) per day Expense Money regardless of where they work.

## ARTICLE 14
### Glass Schedule

Section 1. It is agreed that the following glass schedule of work and persons shall apply for all work contracted by the Employer:

Number of Persons
up to, but not including 3/8"

| | |
|---|---|
| From 120 united inches up to 150 united inches - | 2 persons required |
| Not over 175 united inches | 3 persons required |
| Not over 200 united inches | 4 persons required |
| Not over 225 united inches | 5 persons required |
| Not over 240 united inches | 6 persons required |
| Not over 260 united inches | 7 persons required |
| Not over 300 united inches | 8 persons required |

Over 300 united inches, Add one person for each 15 united inches.

Glass schedule for 3/8" and above is based on 3.25 lbs. Per 1/4" of glass and square footage calculated on actual inch above fractions, i.e. 60 ½ = 61.

3/8" and up to but not including 3/4"

Will be total weight divided by sixty pounds (60#) per person. (See schedules attached hereto as Appendix A and Appendix B.

3/4" and above

Will be total weight divided by seventy pounds (70#) per persons. (See schedule attached hereto as Appendix C).

7

When automatic lift equipment is used, the person power requirements set forth in the up to, but not including 3/8" schedule shall apply (providing the glass does not have to be unloaded or moved manually).

Section 2. To determine the number of persons required for Insulating Glass Units, use total glass thickness as follows:

Up to 3/8" of glass, use up to, but not including 3/8" schedule
From 3/8" up to 3/4" use - 60 lbs. per person
For 3/4" and over use - 70 lbs. per person

e.g.   1/8" glass - 1/4" air space - 1/8" glass = 1/4" - use schedule
       1/4" glass - ½" air space - 1/4" glass = ½" - use 60 lbs. per person
       ½" glass - ½" air space - 1/4" glass = 3/4" - use 70 lbs. per person

Section 3. It is further agreed that: (1) when glass is manually lifted seven (7) feet or more to platform level, or (2) when weather conditions require it, additional persons shall be used on the following basis:

First size enumerated in the applicable schedule -     1 Additional Person
Next two sizes enumerated in the applicable schedule -   2 Additional Persons
Next three sizes enumerated in the applicable schedule - 3 Additional Persons
Next four sizes enumerated in the applicable schedule -  5 Additional Persons

Union Glazing Schedule
Persons Required

Plastics Up To and Including ½"

| UNITED INCHES | When manually lifted Under 7 ft. to platform level - persons required | When manually lifted 7 ft. or more to platform level - persons required |
|---|---|---|
| From 120 United Inches | 2 | 3 |
| Up to 160 United Inches | 3 | 4 |

All safety precautions will be adhered to.

Section 4. Upon request of the Foreman for extra help, the same shall be furnished by the Employer.

Section 5. It is further agreed that all trucks setting glass shall be equipped with a first aid kit. If employees ride the back end of the truck, the truck must be equipped with a tarpaulin.

Section 6. It is further agreed that chauffeurs, drivers of trucks, glazing superintendents (so-called) or Employer shall in no way assist directly or indirectly in the setting of glass.

Section 7. Chauffeurs or drivers of trucks shall not hold ladders or in any manner shape or form be the supervisor of Glaziers on any glazing job. Truck drivers belong on the truck only.

Section 8. It is also agreed that the Employer shall identify all trucks or vehicles used in the glass and glazing trade by the name of the Employer permanently affixed to each side of the truck of vehicle.

Section 9. All wood sash shall be bedded in putty, blocked and sufficiently pointed, and the putty line must be extended to cover to the end of the rabbet.

Section 10. The Business Representatives or any other authorized representative of the Union, shall have the right to visit all places, shops or jobs where work is going on for the purpose of inspection. They shall also have the right to examine working cards and pay envelopes of all employees covered by this Agreement.

Section 11. No Employer shall at any time make any arrangements whatsoever, written or oral, with any Glazier for the performance of glazing work or any description whatsoever, other than to employ Glaziers as provided for in this Agreement in the usual and regular manner.

8

## ARTICLE 15
### Resetting Glass/Removal of Glass

It is also agreed that where storefronts are to be reset, the glass schedule shall apply when glass is removed from the opening.

When a plate is broken and a replacement is being made in two (2) or more lites, the salvage may be stripped out of the opening with the crew required for one-half (½) the opening (minimum three (3) persons required), so long as no single piece larger than one-half (½) of the opening is removed.

## ARTICLE 16
### Grievance Procedure

Section 1. Any grievance, dispute, misunderstanding or difference arising during the life of this Agreement, interpretation of the same shall be decided by a Committee composed of three (3) representatives appointed by the Employers and three (3) by the Union; representatives will be appointed only for the length of the contract; and in the event of their being unable to agree, a third party shall be selected by them to act as a Committee or Arbitrator. In the event that they are unable to agree upon the impartial committee or arbitrator, he/she shall be selected from a list submitted by the Federal Mediation and Conciliation Service upon the request of either party to this Agreement. The Federal Mediation and Conciliation Service will submit a list of five (5) Committees or Arbitrators. The Union shall strike the first name from the list and the Employer shall then strike one name, and thereafter the parties shall strike alternately. The person whose name remains, shall be the Committee or Arbitrator, provided that either party, before striking any name, shall have the right to reject one (1) panel of Committees or Arbitrators. The Committee or Arbitrator shall be notified of this selection by a joint letter from the Employer and the Union requesting that he/she/they set a time and place for the hearing, subject to availability of the Employer and the Union representative, and the letter shall specify the issue(s) to the Committee or Arbitrator. The Committee or Arbitrator shall have no right to amend, modify, nullify, ignore or add to the provisions of the Agreement. He/she/they shall consider and decide only the particular issue(s) presented to him/her/them in writing by the Employer and the Union, and his/her/their decision and award shall be based solely upon his/her/their interpretation of the meaning or application of the terms of this Agreement to the facts of the grievance presented. The award of the Committee or Arbitrator shall be final and binding on the Employer, the Union and the Employee(s) involved. The expenses of the Committee or Arbitrator, including his/her/their fee, shall be equally shared by the Employer and the Union. If a Committee or Arbitrator determines that the violation of the Agreement is willful, he/she/they shall have the authority to attach to any monetary award rendered hereunder a liquidated damage of Twenty Five Percent (25%) of such award to be paid to the grieving party. If the Employer fails to comply with any award or decision of the Arbitrator, then the Union will not be prohibited by Section 2 of this Article from resorting to economic and/or legal action including withholding of services, striking or picketing during the period of such non-compliance; providing the Union, before resorting to such economic action, shall give the Employer two (2) business days' written notice of its intention to take such economic action.

To be a legal grievance under this Agreement, the Employee or the Union must present said grievance in writing to the Employer representative within thirty (30) days of the event giving rise to the grievance or within thirty (30) days after such grievance comes to the knowledge of the aggrieved Employee.

Section 2. Except as otherwise provided in Section 1, above and in Article 18, Section 7, the grievance machinery provided herein and the administrative and judicial remedies and procedures provided by the statute are the sole means of settling any dispute by the employees against the Employers whether relating to the interpretation of this Agreement or otherwise; accordingly, neither the Union nor the Employees will instigate, promote, or engage in any strike, slow-down, or concerted withholding of services during the term of this Agreement, provided no Employee shall be disciplined for refusing to cross a lawful primary picket line established by any other union. The Employer agrees that there will be no lockout during the term of the Agreement.

9

Section 3. Employees, Employers and the Union are encouraged to utilize the Grievance Procedure prior to seeking judicial remedies.

## ARTICLE 17
### Vacations

Each Employee shall take a two (2) week vacation. Vacations will, in so far as possible, be granted at times most desired by the Employee. However, in order to insure an orderly operation, sufficient notice in advance must be given and then mutually agreed to by the Employer. An Employee may take a third week's vacation.

## ARTICLE 18
### Health and Pension and Annuity Contributions

Section 1. Effective June 1, 1998, the Employer shall pay Three Dollars and Ninety Eight Cents ($3.98) for each hour worked be each Journeyperson and Apprentice Glazier into the Health and Welfare Trust Fund. The Employer is required to make contributions to the Fund for employee/owner, partial owner, or direct relative; husband, wife, brother or sister, son or daughter, performing work of a type not falling within the jurisdiction of this Agreement, including but not limited to supervision, general management, sales, estimating, clerical or maintenance work, the Employer of the Employee shall make contributions to the Health and Welfare Fund on behalf of that Employee for a minimum of forty (40) hours per week.

Section 2. Effective June 1, 1998, the Employer shall pay Three Dollars and Sixteen Cents ($3.16) for each hour worked by Journeyperson Glaziers into the Local No. 27 Pension and Retirement Plan. The Employer is required to make contributions to the Fund for the Employee/owner, partial owner, or direct relative; husband, wife, brother or sister, son or daughter, performing work of a type not falling within the jurisdiction of this Agreement, including but not limited to, supervision, general management, sale, estimated, clerical or maintenance work, the Employer of the Employee shall make contributions to the Pension and Retirement Plan on behalf of that Employee for a minimum of forty (40) hours per week.

Section 3. 1a. Commencing the first day of June 1974, and for the duration of the Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the International Brotherhood of Painters and Allied Trades Union and Industry Pension and Annuity Fund for each Employee covered by this Agreement, as follows:

1b. For each hour or portion thereof, for which an employee received pay, the Employer shall make a contribution of Five Cents ($.05) to the above named Pension and Annuity Fund. Effective June 1, 1998, the Employer shall make a Two Dollar and Twenty Five Cents ($2.25) per hour worked contribution to the above named Pension and Annuity Fund.

1c. For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the Employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

1d. Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification, covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

1e. The payments to the Pension and Annuity Fund required above, shall be made to the International Brotherhood of Painters and Allied Trades Union and Industry National Pension and Annuity Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

2. The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust.

10

3. All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension and Annuity Fund.

4. If an Employer fails to make contributions to the Pension and Annuity Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of the payments due together with attorney's fees and such liquidated damages not to exceed Twelve Percent (12%) as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

5. The Pension and Annuity Plan adopted by the trustees of said Pension and Annuity Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

Section 4. Payments to the Glaziers Union Local No. 27, Pension and Retirement Plan and Glazing Employers and Glaziers Union Local No. 27 Health and Welfare Plan, shall be made monthly, no later than the tenth (10th) day of the succeeding month for which hours are reportable.

Each Employer agrees that any payment not made within fifteen (15) days of the succeeding month for which hours are reportable, shall be subject to liquidated damages of Twenty Five Percent (25%) in addition to the amount originally required under the terms of this Agreement requiring a contribution to the Pension and Retirement and Health and Welfare Plan.

Section 5. If an Employer fails to make contributions to any of the Funds referred to in this Article within ten (10) days after the date required by the Trustees of this Agreement, the Union shall have the right to take whatever legal steps are necessary to secure compliance with this Agreement, and any other provisions hereof to the contrary notwithstanding and the Employer shall be liable for all costs for collection of the payments due together with attorney's fees and such liquidated damages not to exceed Twenty Five Percent (25%) as may be levied by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may er provided or set forth elsewhere in this Agreement; providing the Union, before resorting to economic action such as striking or picketing, shall give the Employer two (2) business days' written notice of its intention to take such economic action.

Section 6. The Union shall require the Employer to post with it a Surety Bond, Cash Bond or Surety Letter of Credit Recommendation from his/her financial institution in an amount of between Four Thousand Dollars ($4,000.00) and Thirty Thousand Dollars ($30,000.00) to insure the Employer's making all payments to the Welfare and Pension Funds and wages as provide for in this Agreement.

The amount of the bond or surety to be based on the following schedule:

| Number of Employees | Amount of Bond |
|---|---|
| 1 through 4 | $ 4,000.00 |
| 5 through 9 | $ 7,000.00 |
| 10 through 14 | $10,000.00 |
| 15 through 19 | $15,000.00 |
| 20 through 30 | $20,000.00 |
| Over 30 employees | $30,000.00 |

The Employer may provide a personal guarantee in lieu of bond.

Section 7. Every Employer subject to and bound to this Agreement, hereby agrees to check-off from the wages of any Glaziers employed by such Employer, during the terms of this Agreement, Administrative Dues per the conditions set forth in the Union's By-Laws and remit three percent (3%) of the gross pay to the Union on or before the 10th day of the following month.

11

## ARTICLE 19
### Chicagoland Construction Safety Council/Labor Management Fund

Section 1. Effective June 1, 1991, each Employer shall contribute One Cent ($.01) for each hour worked by employees under this Agreement to the Chicagoland Construction Safety Council, a not-for-profit corporation.

Section 2. Effective June 1, 1995, each Employer shall contribute Two Cents ($.02) for each hour worked by employees under this Agreement to the Painters and Allied Trade Labor Management Corporation Fund (P&ATLMCF), a not-for-profit organization. Contributions will be remitted to the Apprentice Training Fund for distribution to the P&ATLMCF.

## ARTICLE 20
### Disciplinary Action

The Union agrees to cooperate with Management and support disciplinary bars given to Employees for just cause.

## ARTICLE 21
### Federal and State Legislation

Section 1. The provisions of this Agreement shall be effective only to the extent permitted by the Labor Management Relations Act of 1947, as amended.

Section 2. In the event that any Federal or State legislation, governmental regulation or court decisions cause invalidation of any Article or Section of this Agreement, all other Articles and Sections not so invalidated shall remain in full force and effect.

## ARTICLE 22
### Contract Duration/Signature Page

This Agreement shall continue in full force and effect from June 1, 1998 through May 31, 2003 and shall continue in force and effect from year to year thereafter, unless either party shall desire to change any of the terms herein, in which case a written notice of the desired change(s) must be served to the other party not less than sixty (60) days nor more than ninety (90) days written notice by registered mail or certified mail prior to the expiration date.

IN WITNESS WHEREOF, said parties have to this Agreement, or by their representatives on their behalf, respectively, set their hands and seals.

EMPLOYER

MIDWEST BUILDING SERVICES

BY: _Abraham Asllani_

Abraham Asllani, president
(Please print name signed above)
DATE: 2-12-01

GLAZIERS, ARCHITECTURAL METAL
AND GLASS WORKERS LOCAL UNION
NUMBER 27, CHICAGO AND VICINITY,
INTERNATIONAL BROTHERHOOD OF
PAINTERS AND ALLIED TRADES, AFL-CIO

BY: _____ President

BY: _____ Recording Secretary

DATE: 2-6-01